# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MICHAEL D. SMITH, )
)
      Plaintiff, )
)
v. ) Case No. CIV-06-392-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
      Defendant. )

## OPINION AND ORDER

Plaintiff Michael D. Smith (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on October 31, 1967 and was 38 years old on the date of ALJ's decision. He completed his education through the twelfth grade with special education classes. Claimant previously worked as an industrial cleaner, a construction worker, an industrial commercial groundskeeper, and a production welder. Claimant alleges an inability to work beginning November 15, 2004, due to bilateral knee problems, ongoing problems from burns suffered to his feet, hip problems, obesity, hypertension, sleep problems arising from continuing pain, concentration problems, and medication side effects.

## Procedural History

On May 4, 2005, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income benefits under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications for benefits was denied initially and upon reconsideration. A hearing was conducted by ALJ Lantz McClain on February 28, 2006. Thereafter, the ALJ denied benefits in a decision rendered March 28, 2006. On August 4, 2006, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow him to perform other work that existed in significant numbers in the national economy.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in failing to (1) engage in a proper credibility analysis; and (2) properly evaluate Claimant's RFC.

**Credibility Analysis**

Claimant challenges the ALJ's rejection of his testimony based upon the lack of credibility. Claimant's significant medical

4

history began with a surgery upon his knee on November 2, 1999. The arthroscopic surgery was performed by Patrick Gannon, M.D. to repair a tear of the anterior horn of the lateral meniscus in Claimant's left knee. (Tr. 213-214). By all indications, the surgery was successful. (Tr. 212).

Claimant presented to the McAlester Regional Health Center on October 1, 2001 with burns on his feet. The burns were caused by cement in his boots at the workplace. (Tr. 246). Claimant underwent multiple debridement treatments and dressing changes to both feet. (Tr. 237-246).

Claimant again saw Dr. Gannon on November 16, 2001 concerning pain in his left knee. Dr. Gannon noted Claimant's injury to his feet and that, as a result, he "has been seated since that time and has had significant increase in his discomfort. He has been unable to do his usual walking exercise." (Tr. 208). X-rays indicated a mild patellofemoral arthrosis on the lateral view. The lateral joint space of the left knee was slightly more narrow than the right. Dr. Gannon also noted a large effusion in the suprapatellar pouch of the left knee. Dr. Gannon aspirated and injected the knee. (Tr. 208-209).

On May 7, 2002, Claimant sought treatment from Dr. Gannon for right knee pain after he twisted his knee. Claimant complained he was unable to fully flex the knee. Dr. Gannon noted a large effusion on the knee. X-rays showed an effusion in the

5

suprapatellar pouch with mild patellofemoral arthrosis noted on the sunrise view. Dr. Gannon recommended that an MRI be performed on the knee but Claimant's insurance would not cover the procedure. (Tr. 207).

Claimant also sought treatment for right knee pain on September 4, 2002 from Jackie Turnbull, MS ARNP. The pain arose after Claimant banged his knee on a valve. Ms. Turnbull noted Claimant's patella was moveable and he had fluid on the knee. X-rays showed a large joint effusion in the suprapatellar joint space. Claimant was told to elevate his leg and was provided an ace bandage wrap. (Tr. 190, 203).

On January 27, 2003, Claimant was attended by James B. Melton, M.D., complaining of left knee problems. X-rays indicated joint effusion. (Tr. 139). X-rays also showed Claimant's right hip joint was mildly narrowed superiorly with some mild sclerotic changes about the acetabular rim. The left hip showed mild narrowing superiorly as well. Some suggestion of mild sclerotic change about the acetabular rim was noted. Claimant was diagnosed with degenerative arthritis in his hips. (Tr. 138). Degenerative changes in the hips were also noted in x-rays taken in August of 2003. (Tr. 189).

On February 5, 2003, Claimant was seen by David L. Trent, M.D. and diagnosed with inflammatory arthritis. Dr. Trent stated Claimant's laboratory testing was suggestive of rheumatoid

arthritis in his knees. He was treated with Celebrex and was taking Prednisone. (Tr. 137). On February 19, 2003, Dr. Trent indicated Claimant's activity had improved. (Tr. 136). Claimant was also treated with Vioxx. (Tr. 152).

In August of 2003, Claimant suffered a left knee strain while climbing down from a tractor. (Tr. 195). On August 27, 2003, Dr. Gannon examined Claimant and noted moderate effusion of his left knee, substantial medial joint line tenderness, and some lateral tibiofemoral joint line tenderness. Dr. Gannon reported Claimant suffered patellofemoral crepitance with range of motion. (Tr. 142).

On September 9, 2003, Dr. Gannon saw Claimant as a follow-up to his complaints of left knee pain. Dr. Gannon noted improvement with some anterior knee discomfort and crepitance. Resolution of effusion was indicated with some modest medial tenderness. Dr. Gannon's notes full motion and good stability with substantial patellofemoral crepitance. X-rays showed marked patellofemoral osteoarthritis. Dr. Gannon released Claimant to work without restriction. (Tr. 206).

On November 5, 2003, Claimant sought treatment for knee and ankle pain as well as chest pain. Claimant was diagnosed with hypertension and degenerative joint disease and was treated with HCTZ, Prinivil, and Vioxx. (Tr. 150-151).

On January 16, 2004, Claimant was attended by Dr. Gannon as a

follow-up after his "traumatic arthrotomy with extensive contamination and repair of the vastus lateralis and lateral retinaculum." Claimant was very stiff. His range of motion was from 40 to 60 degrees with discomfort. The wound was entirely benign with a very minimal amount of swelling of the knee. He was to start physiotherapy. (Tr. 141).

On November 2, 2004, Claimant complained of severe knee pain and joint pain with difficulty ambulating. Claimant was treated with Prednisone, Ultram, and Naprosyn. (Tr. 148-151).

Claimant was evaluated by Steven Nussbaum, D.O. during a consultative examination. Dr. Nussbaum described Claimant as an obese male whose movements are "stiff and slow." He determined Claimant's range of motion were within normal limits, although Claimant suffered some discomfort. His gait was "somewhat wide-based" at a slow speed with stiffness and a slight limp favoring the left knee without the use of any assistive devices. Knee flexion was noted at 90 degrees in the left knee and 100 degrees in the right knee. Dr. Nussbaum diagnosed Claimant with hypertension, obesity, degenerative arthritis in both knees, and infra-patellar chondromalacia. (Tr. 172-178).

In his decision, the ALJ noted Claimant's problems with his knees, his weight, and the burns to his feet. To that end, he found Claimant suffered from the severe impairments of degenerative arthritis of both knees, status post burns to both feet, and

obesity. (Tr. 14). However, he concluded that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. 15). The ALJ found the medical records were not consistent with total disability. He determined nothing in the medical records suggests Claimant's conditions would prevent him from performing sedentary work. He found Claimant's treating physicians had not suggested in their opinions that Claimant was disabled. The ALJ discussed that it was reasonable to conclude Claimant could not stand up for six hours in an eight hour day and that he should be limited to sedentary work. Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. This Court concurs with the ALJ's evaluation of the credibility of Claimant's statements concerning the level of his disability in light of the objective medical evidence in the record. While Claimant's conditions are clearly debilitating, they are not disabling to the extent of preventing sedentary work. The ALJ has

9

sufficiently linked references to the medical record with his findings of credibility to satisfy his obligation under this analysis. Thus, this Court finds no error in his evaluation of credibility.

### RFC Determination

Claimant also contends the ALJ's RFC evaluation was flawed. Specifically, Claimant asserts the record does not support the ALJ's RFC findings that Claimant could sit with normal breaks about 6 hours in an 8 hour workday. Claimant cites to the report of Dr. Gannon. Dr. Gannon's opinions do not help Claimant's cause. The record to which Claimant directs this Court was dated November 16, 2001 after Claimant burned his feet which required him to sit for a two month period of time rather than engage in his normal walking exercises. No record since that time has noted a similar restriction. Moreover, the RFC criteria outlined by the ALJ does not preclude Claimant from engaging in walking exercises outside of the work arena.

Claimant also cites to a document entitled "Disability Report" completed by "R. Hull." Claimant specifically noted a line in the report which showed Claimant "had to stand for a period of time before he could start walking after interview" as contradictory evidence to the ALJ's findings. (Tr. 98). This notation does not conflict with the RFC factual findings made by the ALJ. The fact

Claimant must hesitate between sitting and walking does not preclude Claimant from performing the requirements for sedentary work.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 15th day of November, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE